IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YAAKOV BEN ISSASCHAR | : | |
| | : | CIVIL NO. 13-2415 |
| v. | : | |
| | : | |
| ELI AMERICAN FRIENDS OF THE ISRAEL | : | **FILED** |
| ASSOCIATION FOR CHILD PROTECTION, INC. *et al* | : | |
| | : | FEB 2 5 2014 |

**MEMORANDUM**

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**Jones, II, J.**                                                                 **February 24, 2014**

Plaintiff Yaakov Ben Issachar has brought multiple claims in a *pro se* Complaint (Dkt.
No. 5) against Defendants Yehoram Shaked, Tova Sivan, and Nathan Nachmani (together, the
"Foreign Judges"), ELI-American Friends of the Israel Association for Child Protection, Inc.,
Hanita Zimrin, and Dani Male-Ron (together, the "ELI Defendants"). Presently before the Court
are each Defendant's Motion to Dismiss (Dkt. Nos. 21 & 22), Plaintiff's "Declaration in
Opposition to the Motions to Dismiss" (Dkt. Nos. 30 & 31); the Reply Brief of the Foreign
Judges (Dkt. No. 34), and the Reply Brief of Dani Male-Ron (Dkt. No. 35). For the reasons that
follow, Defendants' Motions are granted.

## I.      LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual
allegations as true, construe the complaint in the light most favorable to the plaintiff, and
determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled
to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). After the Supreme
Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "threadbare

recitals of a cause of action's elements, supported by mere conclusory statements" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the alleged misconduct." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned the-defendant-unlawfully-harmed-me accusation."). Moreover, "the factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8 [of the Federal Rules of Civil Procedure]." *Villegas v. Weinstein & Riley, P.S.*, 723 F. Supp. 2d 755, 756 (M.D. Pa. 2010) (quoting *Phillips*, 515 F.3d at 232)

## II.   **FACTUAL BACKGROUND**

For the purpose of deciding the instant Motions, the Court must take all alleged facts as true. *Phillips*, 515 F.3d at 233. Nevertheless, the Court need not accept as true inferences unsupported by facts set out in the Amended Complaint or legal conclusions cast as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Magnum v. Archdiocese of Phila.*, 253 F. App'x 224, 225 (3d Cir. 2007). To be clear, under U.S. Supreme Court precedent, this is required at this stage of the case to evaluate, under a specific overall standard and the frameworks of particular legal claims, whether Plaintiff has alleged facts sufficient to establish that he may eventually be entitled to redress such that any of his claim(s) should be allowed to proceed to discovery, summary judgment motion practice, and, potentially, a trial on the merits. Plaintiff makes the following limited factual averments in the Amended Complaint.[1]

---

[1] Quotations are taken verbatim from the Amended Complaint.

On June 18, 2013, Plaintiff Yaakov Ben Issachar ("Plaintiff"), a resident of Israel, filed the instant Complaint alleging Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961 *et seq*). These allegations stem from a custody battle that took place in the Israeli Courts in 2005—a system that Plaintiff alleges is "expressly discriminatory against men." Plaintiff alleges that his daughter was "'kidnapped' with the help of social workers and Judges [the ELI Defendants and Foreign Judges], and locked up in a facility operated by ELI." (Compl. ¶8). Plaintiff alleges that Defendants have engaged in a "massive campaign to 'catch' poor children and transfer them to outplacement facilities (first temporary, and then permanent),[that] is cruel, inhuman, degrading to the parents and children and is conduct that is in gross violation of human rights." (*Id.* ¶26). Purportedly as part of this widespread "campaign" in Israel, the ELI Defendants and the Foreign Judges caused harm to Plaintiff through actions related to a custody battle in the Israeli Courts. (*Id.* ¶¶27-37). In 2005, the Foreign Judges ruled that Plaintiff's wife should have custody of the daughter, and the daughter was placed "in an emergency shelter operated by ELI-in Tel Aviv" (*Id.* ¶¶30, 31-38). ELI purportedly has a fundraising arm "ELI-USA," "registered in . . . Rydal, Pennsylvania," which "finance[s] a child prison in Israel and kidnapping of innocent children from parents into outplacement facilities."( *Id.* ¶10). Plaintiff brings claims against: Defendant Eli-American Friends of The Israel Associate for Child Protection Inc.("Eli-USA"); Hanita Zimrin and Dani-Male Ron, Israeli citizens "who [are]on the Board of ELI-USA"; and three Israeli Judges Yehoram Shaked, Tova Sivan, and Nathan Nachmani (*Id.* ¶¶10-16).

As to the substance of Count One of Plaintiff's RICO allegations--Acquisition and Maintenance of an Interest in and Control of an Enterprise Engaged in a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(b)", Plaintiff alleges that ELI, which "was granted the

authority by Israel's National Ministry of Social Welfare to handle every case of sexual abuse in

Central Israel," created a series of fundraising websites in the United States and engaged in other

fundraising efforts, such that ELI could "deceive[] the above listed donors into giving her (sic)

money so that she and co-defendants can increase their salaries, distribute it in clandestine

channels, and torment and molest more and more children under the false guise that the children

are victims of 'neglect and abuse' that never happened." (*Id.* ¶¶41-53). These funds, in turn,

were "spent in Israel to kidnap children from parents, to incarcerate children in facilities and to

launch a war against the whistleblowers and activists who started protests against this

organization." (*Id.* ¶54). Plaintiff also alleges that: "ELI, Zimrin and Male-Ron also operate a

therapy clinic for sexually molested children. They use the money collected in the United States

to encourage women in divorce to fabricate false charges of sexual molestation by the father of

the children to yield two goals: Defendants are enriched and supplied with jobs, while the

women in divorce are able to get automatic custody, and take over all of the husbands' money."

This and other activities on a part of the Defendants allegedly are part of a conspiracy to "silence

the Plaintiff." Plaintiff also details that a number of actions allegedly taken by Defendants in

connection with the Israeli custody dispute amount to "predicate acts" and constituted a

"continuing threat of their respective racketeering activities" in violation of 18 U .S .C. §1962(b).

As to Count Two—"Conduct and Participation in a RICO *Enterprise* through a Pattern of

Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(c)—Plaintiff realleges his previous

allegations and further alleges that:

> The RICO enterprise complained of begins in the United States by way of false or
> unlicensed fundraising, the fruits of which then sent to Israel to start campaigns that
> inflate the severity of the problem, so as to put pressure on the ministry of Welfare to
> give ELI monopoly in certain territory so that when the public calls the hotline to
> complain of any minor behavioral problem with a child, ELI then is recommended to
> Sivan, Shaked and Nachmani, who rubber stamp Welfare documents. Then police is used

to kidnap the children, without due process, and place them in prisons for what is supposed to be three years but can last much longer. The money from the US is then spent for salaries, trips overseas and payments to confidants who work closely with Sivan, Shaked and Nachmani.

(*Id.* ¶70)

Finally, as to the third and final Count—"Conspiracy to Engage in a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(d)"—Plaintiff merely recites the statutory elements of the claim.

## III.   DISCUSSION

### A. The Foreign Judges

The Motion to Dismiss of the Foreign Judges identifies several threshold grounds for which they believe Plaintiff's complaint warrants dismissal.  One such ground is this Court lacks personal jurisdiction over the Foreign Judges in this matter.  This Court agrees with the Foreign Judges regarding jurisdiction.   "Defendants Shaked, Sivan, and Nachmani are current or retired family court judges of the State of Israel who allegedly were involved in Plaintiff's child custody dispute in Israel as part of their official duties." (MTD 5).   Judges Shaked, Sivan, and Nachmani all reside in Israel, and the acts alleged in the Complaint, as to the Foreign Judges, all took place in Israel.

Rule 12(b)(2) provides for dismissal for lack of personal jurisdiction. Once a defendant has raised lack of personal jurisdiction as a defense, the burden to prove that jurisdiction exists in the forum state lies with the plaintiff; a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.,* 292 P.3d 361, 368 (3d Cir.2002). [2] A plaintiff, however must show "with reasonable particularity" enough

---

[2] In some circumstances, personal jurisdiction in civil RICO actions may be predicated on 18 U.S.C. § 1965(d), where service on defendants is made in the United States. *See Fed. Home Loan Mortg. Corp. v. Commonwealth Land Tit. Ins. Co.*, No. A. 92-CV-5255, 1993 WL 95494, at *3 (E.D. Pa. Mar. 31, 1993)

contact between the defendant and the forum as to support a *prima facie* case in favor of the exercise of personal jurisdiction by the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1986); *Mellon Bank v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992). Thus, a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings i.e., whether *in personam* jurisdiction actually lies." *Clark v. Matsushita Elec. Indus. Co ., Ltd.,* 811 F. Supp. 1061, 1064 (MD. Pa. 1993) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.3d 61, 66 n. 9 (3d Cir.1984)).

When the issue of personal jurisdiction is raised, it is incumbent upon the plaintiff to show either that "the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has continuous and systematic contacts with the forum state (general jurisdiction).'" *See Mellon Bank (East) PSFS v. Diveronica Bros. Inc.,* 983 F.2d 551, 554 (3d Cir.1993) (internal quotations omitted).   Plaintiff has provided no set of facts from which the court could infer that the Foreign Judges have the systematic and continuous contacts with Pennsylvania necessary to establish general jurisdiction.

Plaintiff has not alleged that the Foreign Defendants were ever present in the United States, let alone Pennsylvania, from which this court could infer that Defendants purposely availed themselves of the forum state or of the benefits and protections of its law.   Plaintiff's cause of action arises out of Defendants' activities in Israel, not from any activities or contacts

---

(internal quotation marks and citation omitted).   Where service takes place out of the United States, as Plaintiff alleges was the case here—service was purportedly served on the Foreign Judges in Israel— Section 1965(d) cannot be the basis for personal jurisdiction, and the plaintiff must look to the state long-arm statute to confer personal jurisdiction over a foreign defendant. *See Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1183-84 (C.D. Cal. 1998).

within Pennsylvania.[3]   For these reasons, Plaintiff's claims against the Foreign Judges will be dismissed for failure to establish personal jurisdiction.

### B. Eli Defendants

#### a. Defendant Dani Male-Ron

The ELI Defendants raise an argument similar to the Foreign Defendants' regarding personal jurisdiction over Defendant Dani Male-Ron, a resident of Israel.  Plaintiff's sole allegation regarding Defendant Male-Ron's contact in this forum is that he is allegedly "on the Board of ELI-USA and was the chief promulgator of the conspiracies to target children for lock-up and/or treatment at Eli-Israel facilities."  Engaging in the same minimum contacts analysis, this Court cannot find that Plaintiff can make a showing of "general" or "specific" jurisdiction. Defendant Male-Ron has filed two Declarations in this case, both of which make clear that he is not subject to personal jurisdiction in this forum.  Defendant Male-Ron has submitted an affidavit averring that he is not a member of the Board of Eli-USA, and that he is merely an employee of "The Israel Association for Child Protection ('ELI Israel'), an Israeli charitable organization (located in Israel) that is not a party to this case."  (Decl. 1).[4]

---

[3] Plaintiff's sole response to the Foreign Judges jurisdiction argument is that the Foreign Judges' "personal contact with the United States is derived from benefits distributed to them from the funds collected in the USA."  This allegation is insufficient for this Court to predicate personal jurisdiction, given the bald and indirect nature of the allegation as it relates to Pennsylvania.

[4] In addition to general allegations that Defendant Male-Ron sent fraudulent mailings to potential donors on behalf of ELI, Plaintiff with respect to Defendant Male-Ron's contacts with Pennsylvania and the United States,  Plaintiff alleges that

> Dani Male Ron is the successor in interest of Hanita Zimrin in managing the entire operations and enterprises of ELI, both in Israel and in the USA. Zimrin who used to be the engine and master mind of ELI operations worldwide is now keeping "low key" and has become a sort of "honorary" fund raiser for ELI, and Dani Male Ron now really the chief person in charge of ELI Israel and its fundraising "subsidiary" in USA. He is featured in the web site dedicated to fundraising in the USA.
> . . .

7

b.    Remaining ELI Defendants

The remaining Defendants, ELI American Friends of the Israel Association for Child Protection, Inc. and Hanita Zimrin assert that Plaintiff's Complaint fails to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff's two[5] substantive RICO claims are based on 18 U.S.C. §§1962(b)[6] and 1962(c)[7], respectively.  "To establish a RICO claim, a plaintiff must show '(1) the existence of a RICO enterprise; (2) the existence of a pattern of racketeering activity; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO enterprise; and (4) resulting injury to the plaintiff's business or property.'" *McCoy-McMahon v. Godlove*, 08-CV-05989, 2011 WL

---

Male-Ron is a direct beneficiary of the stream of commerce generated in the United States, in general, and Pennsylvania, which is the headquarters of ELI-USA
. . .
[Male-Ron] is the chief Principal of the parent organization that receives hundreds of thousands of dollars every year.

In a second declaration, Defendant Male-Ron denied these unsupported allegations and confirmed the truth of his previous declaration.

[5] In Count III, Plaintiff alleges a violation of 18 U.S.C. §1962(d), ("It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.") 18 U.S.C. §1962(d). This claim, however, is merely a recitation of the statutory elements, and offers no sort of factual allegations. Because the Plaintiff "fail[s] to plead facts supporting a conclusion that this was the object of the alleged conspiracy," this conspiracy charge is dismissed as it fails to state a claim for relief. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527,539-40 (3d Cir. 2012). Furthermore, as discussed herein, Plaintiff's inability to plead a violation of Section 1962(c) necessitates dismissal of his conspiracy claim under Section 1962(d).   *See Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 229 (3d Cir. 2007).

[6] Section 1962(b) provides:
It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which, affect, interstate or foreign commerce.

[7] Section 1962(c) provides:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

4820185 (E.D. Pa. Sept. 30, 2011) (citing *Smith v. Jones, Gregg, Creehan & Gerace, LLP*, 2:08-CV-365, 2008 WL 5129916 (W.D. Pa. Dec. 5, 2008)).

The Eli Defendants argue, *inter alia*, that Plaintiff lacks standing to bring a civil RICO claim because he cannot establish: "(1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." (Defs. Mot. Dismiss at 13 (citing *Maio* v. *Aetna, Inc.,* 221 F.3d 472, 483 (3d Cir. 2000))). Plaintiff alleges no sort of pecuniary harm to his "business or his property." Plaintiff is an Israeli citizen apparently arguing that the corruption of the Israeli Courts, funded by ELI's American fundraising arm, caused him harm in an Israeli-based custody dispute. Courts in this district are unwilling to permit RICO claims where the allegations do not seek monetary recovery or allege monetary damages. *See Knit With v. Knitting Fever, Inc.*, CIV.A. 08-4221, 2012 WL 2938992 (E.D. Pa. July 19, 2012). Indeed, several courts, including those in this District, have made that precise finding with respect to domestic relations and custody disputes. *See Bruneio v. Fenchen,* CIV. A. 93-4641, 1994 WL 2518 (E.D. Pa. Jan. 4, 1994). The lack of pleading of injury to business or property alone would be sufficient to warrant dismissal in this matter.

Even if Plaintiff's argument that the supposedly fraudulent fundraising in the United States by ELI-USA constitute predicate acts under RICO, Plaintiff cannot and does not allege that any injury was proximately caused by Defendants alleged acts. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461(2006). There must be "'some direct relationship between the injury asserted and the injurious conduct alleged.'" *Id.* (quoting *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268, (1992)). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the

plaintiff's injuries." *Id.* at 461.  Plaintiff alleges that "the predicate RICO acts occurred in the United States and are based on fraudulent fundraising by way of mails and wires."(Decl. 2, ¶¶ 27-30).   Plaintiff argues broadly that "[d]amage occurs to the Community in the US which loses charitable funds, and in Israel to the children who are hunted viciously to fill up shelters."  As the individual bringing the action, the harm Plaintiff alleges is far too attenuated from the purported RICO activity of "bogus" fundraising in the United States.    Furthermore, these purported fundraising mailings are not alleged to have originated in the United States, and Plaintiff further has not alleged that he relied on those "bogus" representations contained therein.  *See Stoneback v. ArtsQuest*, 12-CV-03287, 2013 WL 3090714 *15 (E.D. Pa. June 20, 2013) (determining that, even presuming a mailing constituted a predicate act, "a plaintiff who alleges an injury "by reason of" a pattern of mail fraud must show that *someone* relied on the defendant's misrepresentations.")(citing *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 658 (2008)).[8] Though it is clear that Plaintiff has endured stress and trauma during the course of his emotionally-charged, Israeli-based custody battle, there is simply no link between the purported RICO mail fraud and his distress.  *See Fenchen*, 1994 WL 2518 * 4 (RICO injury does not include personal damages such as those [Plaintiff] complains of relating to emotional and physical pain and psychological expenses. In order for [Plaintiff] to have standing under RICO, the litigation-related expenses or damage to his career must have been proximately caused by the alleged racketeering acts.)

---

[8] Notwithstanding the foregoing, Plaintiff also failed to respond to a number of defendants' arguments in their Motion to Dismiss including Points II(C) and (D) of the Eli Defendants' Motion to Dismiss. Dismissal could be warranted on this basis alone.  *Matthews v. Freedman,* 128 F.R.D. 194, 199 (E.D. Pa. 1989); *see also D'Angio v. Borough of Nescopeck*, 34 F. Supp.2d 256, 265 (M.D. Pa. 1999); E.D. Pa. Loc. R. Civ. P. 7.1(c)"

For these reasons, Plaintiff's RICO claims are dismissed.  Given the myriad deficiencies in Plaintiff's pleading, it is apparent to the Court that granting Plaintiff leave to amend would be futile, even under the generous interpretations afforded to *pro se* litigations by the United States Supreme Court, as the law does not provide a remedy for Plaintiffs far-fetched allegations. Accordingly, Plaintiff's case is dismissed with prejudice.